IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


THE MONONGALIA COUNTY
COAL COMPANY,

       Plaintiff/Counter-
       Defendant,

v.                            Civil Action No. 1:18-cv-176
                                     (Judge Kleeh)


UNITED MINE WORKERS OF AMERICA,
INTERNATIONAL UNION, and
UNITED MINE WORKERS OF AMERICA,
LOCAL UNION 1702,

       Defendants/Counter-
       Claimants.


**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 13], AND VACATING ARBITRATION AWARD**

Pending before the Court are cross motions for summary judgment filed by the Plaintiff and Counter-Defendant, The Monongalia County Coal Company ("Plaintiff"), along with the Defendants and Counter-Claimants, the United Mine Workers of America, International Union, and the United Mine Workers of America Local Union 1702 (together, the "Union" or "Defendants"). For the reasons discussed below, the Court denies Defendants' Motion and grants Plaintiff's motion.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 13], AND VACATING ARBITRATION AWARD**

## I.    PROCEDURAL HISTORY

On September 11, 2018, Plaintiff brought this action against
Defendants, seeking to vacate an arbitration award. The Honorable
Irene M. Keeley, United States District Judge, ordered the parties
to submit a joint stipulated record, cross motions for summary
judgment, and response briefs. Defendants filed an Answer and
Counterclaim against Plaintiff. The case was transferred to the
Honorable Thomas S. Kleeh, United States District Judge, on
December 1, 2018. The parties have filed their cross motions for
summary judgment, which are now ripe for consideration.

## II.    BACKGROUND

Plaintiff operates the Monongalia County Mine, an underground
coal mine, most of which is located in West Virginia. Defendants
represent Plaintiff's bargaining unit employees for purposes of
collective bargaining. The collective bargaining agreement that
governs this relationship is the 2016 National Bituminous Coal
Wage Agreement ("NBCWA"). The NBCWA establishes work jurisdiction
of union-represented employees and provides restrictions on
Plaintiff's ability to contract out this work.

### A.    The NBCWA

The NBCWA provides the following regarding "Work
Jurisdiction":

> The production of coal, including removal of
> over-burden and coal waste, preparation,
> processing and cleaning of coal and
> transportation of coal (except by waterway or
> rail not owned by Employer), repair and
> maintenance work normally performed at the
> mine site or at a central shop of the Employer
> and maintenance of gob piles and mine roads,
> and work of the type customarily related to
> all of the above shall be performed by
> classified Employees of the Employer covered
> by and in accordance with the terms of this
> Agreement. Contracting, subcontracting,
> leasing and subleasing, and construction work,
> as defined herein, will be conducted in
> accordance with the provisions of this
> Article.
>
> Nothing in this section will be construed to
> diminish the jurisdiction, express or implied,
> of the United Mine Workers.

ECF No. 11-1 at 10-11. The agreement distinguishes between (1)

Repair and Maintenance Work and (2) Construction Work. The "Scope

and Coverage" of Construction Work is as follows:

> All construction of mine or mine related
> facilities including the erection of mine
> tipples and sinking of mine shafts or slopes
> customarily performed by classified Employees
> of the Employer normally performing
> construction work in or about the mine in
> accordance with prior practice and custom,
> shall not be contracted out at any time unless
> all such Employees with necessary skills to
> perform the work are working no less than 5
> days per week, or its equivalent for Employees
> working on alternative schedules.
>
> Provided further that where contracting out of
> such construction work customarily performed
> by classified Employees at the mine is

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 13], AND VACATING ARBITRATION AWARD**

> permitted under this Agreement, such contracting shall be in accordance with prior practice and custom. Where contracting out is permitted under this section, prior practice and custom shall not be construed to limit the Employer's choice of contractors.

Id. at 13.

The NBCWA also provides:

> All decisions of the Arbitration Review Board rendered prior to the expiration of the National Bituminous Coal Wage Agreement of 1978 shall continue to have precedential effect under this Agreement to the extent that the basis for such decisions have not been modified by subsequent changes in this agreement.

ECF No. 11-2 at 60.

**B.    The Dispute**

The dispute leading to this litigation involves work performed at the Monongalia County Mine on February 25, 2018. ECF No. 1 at ¶ 8. On that day, Plaintiff hired contractors to install supplemental roof support at the mine. Id. On February 28, 2018, the Union filed a grievance (the "Grievance") on behalf of four (4) of its members (the "Grievants"), alleging that Plaintiff violated the NBCWA by hiring a contractor to perform classified work. Id. The Grievants stated that "[c]lassified men have allways [sic] done this work" and requested "48 hours of double time rate

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 13], AND VACATING ARBITRATION AWARD**

of pay and for this practice to cease and desist and be made whole
in all ways." ECF No. 11-4 at 7.

**C.    The Arbitration Award**

On May 17, 2018, the parties presented evidence at a hearing
in front of Arbitrator Thomas L. Hewitt (the "Arbitrator"). ECF
No. 1 at ¶ 9. The Arbitrator issued a Decision and Award (the
"Award") on June 15, 2018, in which he sustained the Grievance.
Id. ¶ 10. The Award includes a Statement of Facts, summaries of
the parties' positions, the Arbitrator's Opinion, his Findings,
and the Award. ECF No. 11-4 at 6–10.

In the Award, the Arbitrator found that "there was no prior
practice of contractors building the wooden cribs of the type
involved in this case." Id. at 8. He further wrote that different
types of roof support systems are categorized differently with
regard to work jurisdiction. Id. The Arbitrator then discussed an
employer's limits in subcontracting pursuant to Article 1A,
subsection (i). Without specifically finding that Plaintiff
engaged in this activity, he wrote that if an employer
"regulates/reduces the size of the workforce" and then assigns
work that cannot be completed by classified employees within the
prescribed time limit, the employer is "circumventing the intent

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 13], AND VACATING ARBITRATION AWARD**

of the contract" and creating an "'impossibility of performance' situation." Id.

The Arbitrator took issue with Judge Keeley's definition of construction work in Monongalia County Coal Co. v. UMWA, 234 F. Supp. 3d 797 (N.D.W. Va. 2017) (the "2017 Decision"), and Plaintiff's interpretation of the decision. He wrote that under Judge Keeley's interpretation of "construction" work, "nearly all work is construction and consequently may be contracted out if current employees are fully employed and working at no less than five (5) days per week." Id. at 9. The Arbitrator wrote that "[i]t appears there may be a concerted effort to abridge the rights of employees by utilizing sub-contractors to perform classified work." Id. He wrote that "it cannot possibly be the intent of the parties to apply the word 'construction' when the result is loss of jurisdictional, protected work to contractors." Id.

The Arbitrator found that "[r]oof support in general is work 'in the production of coal' but has been treated differently by different arbitrators." Id. at 8. He wrote that the work at issue is "protected classified work" that "has not been subject to contracting out since it became signatory to the NBCWA." Id. at 9. As such, it "is not construction work per se[.]" Id. at 10. Therefore, Article 1A, subsection (i) does not apply. He wrote:

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 13], AND VACATING ARBITRATION AWARD**

> The Employer violated Article I and IA, subsection (a) as the building of wooden cribs is work closely associated with the production of coal that has exclusively been performed by classified employees, therefore, it is a contractually-protected activity and not construction work per se, which falls under Article IA, subsection (i). The four Grievants lost the opportunity to perform this protected classified work.

Id. He also found that the case fails to meet the requirements for *res judicata*. Id. He distinguished the case from the 2017 Decision. The 2017 Decision "involved a never-before-used pumpable bag (chemical) system," whereas "[t]he type of wooden crib roof support work at this mine has never before been performed by anyone but classified employees, has never before been performed by contractors and is therefore protected classified work." Id. "[T]here has been no change that would modify this long-accepted interpretation of the contract involving this work." Id.

In crafting a remedy, the Arbitrator wrote, "A contractual violation requires a remedy[.]" Id. Finding that the contractors worked for a total of forty-eight (48) hours, the Arbitrator awarded twelve (12) hours of pay to each of the Grievants at their regular rate of pay. Id.

## D.  Parties' Contentions

Plaintiff now argues that the Court should vacate the Award because it fails to draw its essence from the contract. See ECF

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 13], AND VACATING ARBITRATION AWARD**

No. 1 at ¶ 13. This was construction work, Plaintiff argues, and
contracting for construction work is permissible under the NBCWA
if all employees with necessary skills are working no less than
five (5) days per week. <u>Id.</u> ¶ 17. Plaintiff relies on the 2017
Decision, arguing that Judge Keeley cited several arbitral
decisions finding that "installation of supplemental roof
supports . . . was construction work rather than maintenance
work." <u>Id.</u> (citing 234 F. Supp. 3d at 806). Here, Plaintiff argues,
the Arbitrator "explicitly rejected" binding precedent by finding
that the installation of supplemental roof support is not
construction work. <u>Id.</u> ¶ 18.

Plaintiff further argues that the monetary award issued was
improper because "monetary damages may only be awarded to
'compensate the aggrieved party for losses suffered as a result of
the breach of the Agreement.'" <u>Id.</u> ¶ 20. Defendants argue that the
Arbitrator considered the evidence presented and the common law of
the shop. ECF No. 12-1 at 9. They believe the Award is well-
reasoned, final and binding, and entitled to deference by the
Court. <u>Id.</u>

### III. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate if "there is no genuine
dispute as to any material fact and the movant is entitled to

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 13], AND VACATING ARBITRATION AWARD**

judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant
"bears the initial responsibility of informing the district court
of the basis for its motion, and identifying those portions of
'the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any,' which
it believes demonstrate the absence of a genuine issue of material
fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The
nonmoving party must "make a sufficient showing on an essential
element of its case with respect to which it has the burden of
proof." Id. at 317–18. Summary judgment is proper "[w]here the
record taken as a whole could not lead a rational trier of fact to
find for the non-moving party, there [being] no 'genuine issue for
trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
U.S. 574, 587 (1986).

## IV.  GOVERNING LAW

This Court may review labor arbitrators' decisions under
Section 301 of the Labor Management Relations Act of 1947, 29
U.S.C. § 185, but this power of review is "extremely limited."
Cannelton Indus., Inc. v. Dist. 17, UMWA, 951 F.2d 591, 593 (4th
Cir. 1991). This is because "[t]he parties to a collective
bargaining agreement bargained for the arbitrator's
interpretation, and 'so far as the arbitrator's decision concerns

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 13], AND VACATING ARBITRATION AWARD**

construction of the contract, the courts have no business overruling him because their interpretation . . . is different from his.'" Island Creek Coal Co. v. Dist. 28, UMWA, 29 F.3d 126, 129 (4th Cir. 1994) (citing United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960)). The Supreme Court of the United States, in the "Steelworkers Trilogy,"[1] has "emphasized that federal courts should refuse to review the merits of an arbitration award under a collective bargaining agreement." Mutual Mining, Inc. v. Dist. 17, UMWA, 47 F.3d 1165, at *2 (4th Cir. 1995) (unpublished). Both an arbitrator's findings of fact and interpretation of the law are accorded great deference. Upshur Coals Corp. v. UMWA, Dist. 31, 933 F.2d 225, 229 (4th Cir. 1991). In addition, "[t]he selection of remedies is almost exclusively within the arbitrator's domain." Cannelton, 951 F.2d at 593-54 (citing United Paperworkers Int'l Union v. Misco, 484 U.S. 29 (1987)).

Still, there are some limitations on arbitration awards. The award "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice."

---

[1] The Steelworkers Trilogy includes the following cases: United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); and United Steelworkers of America v. American Mfg. Co., 363 U.S. 564 (1960).

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 13], AND VACATING ARBITRATION AWARD**

Misco, 484 U.S. at 38. In addition, an arbitrator may not "impose
a punitive award or punitive damages" unless a provision in the
collective bargaining agreement provides for them. Island Creek,
29 F.3d at 129 (citing Cannelton, 951 F.2d at 594). Notably, under
Fourth Circuit precedent, compensation for a loss of union work
can be permissible. See Cannelton, 951 F.2d at 594 (writing that
if the arbitrator "ordered monetary damages to compensate
employees for work they were entitled to perform under the NBCWA,
the award might reasonably be construed as compensatory damages
for a cognizable loss of union work"). In deciding whether an award
is punitive or whether it draws its essence from the agreement,
courts should be mindful that arbitrators "need not give their
reasons for an award," but courts may rely on arbitrators'
reasoning to determine whether the arbitrator has applied "his own
brand of industrial justice . . . ." Cannelton, 951 F.2d at 594.

In reviewing arbitration awards, courts "must be concerned
not to broaden the scope of judicial review of arbitration
decisions nor to lengthen a process that is intended to resolve
labor disputes quickly." Id. at 595; see also Upshur Coals Corp.,
933 F.2d at 231 (writing that "[l]abor arbitration serves the
important goal of providing swift resolution to contractual
disputes"). "As long as the arbitrator is even arguably construing

11

or applying the contract and acting within the scope of his authority, the court cannot overturn his decision simply because it disagrees with his factual findings, contract interpretations, or choice of remedies." <u>Misco</u>, 484 U.S. at 30.

As the Fourth Circuit has written, "Above all, we must determine only whether the arbitrator did his job — not whether he did it well, correctly, or reasonably, but simply whether he did it." <u>Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union</u>, 76 F.3d 606, 608 (4th Cir. 1996). In this determination, the Court considers "(1) the arbitrator's role as defined by the CBA; (2) whether the award ignored the plain language of the CBA; and (3) whether the arbitrator's discretion in formulating the award comported with the essence of the CBA's proscribed limits." <u>Id.</u> Furthermore, "the arbitrator must take into account any existing common law of the particular plant or industry, for it is an integral part of the contract." <u>Norfolk Shipbuilding & Drydock Corp. v. Local No. 684</u>, 671 F.2d 797, 799–800 (4th Cir. 1982). The common law, as described above, does not allow the arbitrator to impose punitive damages unless they are provided for in the agreement. <u>See</u> <u>Cannelton</u>, 951 F.2d at 594.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 13], AND VACATING ARBITRATION AWARD**

## V.    DISCUSSION

Recognizing the extremely limited role of the Court in deciding arbitration disputes, the Court still finds that the Award did not draw its essence from the Agreement. The Arbitrator ignored the plain language of the contract in an attempt to dodge a "construction" work classification. Further, the Arbitrator insinuated, without articulating any evidentiary or other basis, that Plaintiff acted in bad faith when scheduling work and hiring contractors.

## A.    Res Judicata

First, *res judicata* does not apply to this action. Under the doctrine of *res judicata*, or claim preclusion, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Montana v. United States, 440 U.S. 147, 153 (1979). "To establish a *res judicata* defense, a party must establish: '(1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and later suit, and (3) an identity of parties or their privies in the two suits.'" Jones v. SEC, 115 F.3d 1173, 1178 (4th Cir. 1997) (citing Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir. 1991)), cert. denied, 523 U.S. 1072 (1998). As to the second prong, identity of the claims, the Fourth Circuit has found that

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 13], AND VACATING ARBITRATION AWARD**

"the appropriate inquiry is whether the new claim arises out of
the same transaction or series of transactions as the claim
resolved by the prior judgment." <u>Meekins</u>, 946 F.2d at 1058.

Plaintiff argues that *res judicata* applies to this case based
on Judge Keeley's 2017 decision. In the 2017 Decision, Plaintiff
argues, Judge Keeley held that construction and installation of
supplemental roof support systems are included in Construction
Work. ECF No. 13-1 at 11. Plaintiff believes the first prong and
third prongs of the *res judicata* test are clearly met. As to the
second prong, Plaintiff argues that the applicable inquiry is
"whether the same evidence would support both actions or
issues. . . . If the two cases require substantially different
evidence to sustain them, the second cannot be said to be the same
cause of action and barred by *res judicata*." <u>Harrison v. Buford</u>,
No. 11-00700, 2012 WL 2064499, at *3 (S.D.W. Va. June 7, 2012).
Here, Plaintiff argues, the evidence is the same, so *res judicata*
should apply: express language in the NBCWA, evidence of past
practices and customs, and prior binding precedent. <u>See</u> ECF No.
13-1 at 12.

The Court finds that *res judicata* does not bar this action.
The second prong of the test is not satisfied under <u>Meekin</u> because
the new claim does arise out of the same transaction or series of

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 13], AND VACATING ARBITRATION AWARD**

transactions as the claim resolved by the prior judgment. The 2017 Decision involved the installation of a pumpable crib system in 2015, while this case involves the installation of roof support on February 25, 2018. While the work is similar, and similar evidence would be produced at a hearing for each, the two events clearly do not arise out of the same transaction because they occurred three years apart.

**B.   Classification of the Work**

Judge Keeley's guidance on the definition of construction work is persuasive to this Court. In the 2017 Decision, she examined whether pumpable crib installation was construction work or repair and maintenance work. Just as it does here, the answer to the question impacted Plaintiff's ability under the NBCWA to contract out the work at issue. She wrote the following:

> To "construct" means "[t]o form by assembling or combining parts; build. To "maintain," on the other hand, has two plausible definitions that could apply to this case: either "[t]o keep in an existing state; preserve or retain" or "[t]o keep in a condition of good repair of efficiency."        As . . . arbitrational precedent . . . confirms, . . . the    common usage of "repair and maintenance" refers to the   upkeep   of   equipment,   machinery,   or existing facilities.

Monongalia Cty. Coal, 234 F. Supp. 3d at 803-04.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 13], AND VACATING ARBITRATION AWARD**

Judge Keeley noted that "numerous arbitral decisions" supported this definition. Id. at 804. She cited an arbitral decision that found that "construction work . . . is work which brings something new to the mine which had not existed prior to the performance of the work in question." Id. (citing Consol-McElroy Coal Co. v. UMWA Local Union 1638, Dist. 6, Case No. D-971AI-9 (Dec. 3, 1997) (Nicholas, Arb.)). Judge Keeley found that by ignoring arbitral precedent and finding that the pumpable crib installation was not construction work, the arbitrator substituted her own notion of industrial justice. Id. at 806.

Defendants argue that this case is different from the 2017 Decision because "[p]umpable cribs had never been used in the mine before and Union miners had never worked on them." ECF No. 12-1 at 18. Contrary to the Union's position, the concept of bringing something "new" to the mine was not in reference to a new type of product but to a new structure in general. The Arbitrator's decision reads as if construction work can only be a "new system" that has not been "used at [the] mine for years." ECF No. 11-4 at 10.

Here, under the guiding principles in the 2017 Decision, which considered a large amount of binding precedent, the work at issue was construction work because the contractors were hired to "build"

new cribs (i.e., create something new at the mine). The Court
agrees with Defendants that the work is production work, but it
also falls into the secondary category of construction work
pursuant to binding precedent.

## C.    Award

Because the work at issue is construction work, and because
it has customarily been performed by Union employees,[2] the
following portion of the NBCWA is applicable: "All
construction . . . customarily performed by classified Employees
of the Employer normally performing construction work in or about
the mine in accordance with prior practice and custom, shall not
be contracted out at any time unless all such Employees with
necessary skills to perform the work are working no less than 5
days per week . . . ." ECF No. 11-1 at 13. The Arbitrator argues
that because Union workers have always performed this work, the
work is classified. However, the NBCWA expressly provides that
<u>even</u> <u>when</u> this work is traditionally performed by classified
employees, it may be contracted out <u>if</u> all employees with necessary
skills are working no less than five (5) days per week. This is
exactly what took place here.

---

[2] <u>See</u> ECF No. 11-4 at 10 (writing that the work "has exclusively
been performed by classified employees").

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 13], AND VACATING ARBITRATION AWARD**

The Arbitrator based his Award on his own notions of right
and wrong. He wrote that "it cannot possibly be the intent of the
parties to apply the word 'construction' when the result is loss
of jurisdictional, protected work to contractors." ECF No. 1-1 at
9. To the contrary, this is exactly what the express language of
the contract says. It does, in fact, provide that the employer may
use contractors for work when Union employees with the necessary
skills are already working. See ECF No. 11-1 at 13. Construction
work is clearly treated differently from other work in the NBCWA.
The Arbitrator has, essentially, examined the plain language of
the contract and found that it could not possibly mean what it
says. He has, instead, classified the work more broadly as
"production" work, while ignoring whether it is construction work.

Further, the Arbitrator cited no facts in support of his
"findings" that there may be "a concerted effort to abridge the
rights of employed . . . ." See ECF No. 11-4 at 9. Without actually
stating that Plaintiff participated in this behavior or pointing
to any evidence in the record supporting such a conclusion, the
Arbitrator discussed ways that employers "circumvent[ ] the intent
of the contract" and create an "'impossibility of performance'
situation." Id. at 8. An employer does this by
"regulat[ing]/reduc[ing] the size of the workforce" and assigning

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 13], AND VACATING ARBITRATION AWARD**

work that cannot be prescribed within a certain time limit, all so
the employer can hire a contractor to do the work. Id. Without
citing any evidence of bad faith on behalf of Plaintiff, he seemed
to insinuate that Plaintiff engaged in this behavior and hired a
contractor in bad faith despite the plain language of the contract
permitting the use of contractors in this very situation.

Considering the record and the Award, this Court cannot
conclude they Arbitrator "arguably" did his job. The Arbitrator
ignored the plain language of the contract, which is disallowed
under clear and long-standing precedent from the Supreme Court of
the United States and other courts. See Misco, 484 U.S. at 38. As
such, he has failed to do his job. This case is markedly different
from Harrison County Coal Co. v. UMWA, No. 1:18-cv-138, 2019 WL
4482476 (N.D.W. Va. Sept. 18, 2019), in which the Court recently
confirmed an arbitration award after the arbitrator found, based
on a binding prior settlement, that the work at issue was
classified work. Here, there has been no evidence submitted to the
Court of a binding prior settlement. Under Judge Keeley's
definition of construction work, which is based on long-standing
arbitral precedent, this work constitutes construction work. It
was traditionally performed by classified employees. As such,
Plaintiff was free to hire a contractor to perform the work if the

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 13], AND VACATING ARBITRATION AWARD**

classified employees with the necessary skills were all working no
less than five days per week. <u>See</u> ECF No. 11-4 at 8 (Plaintiff's
uncontested argument that the "Grievants worked seven (7) days
that week and over ten (10) hours at double time" on the date the
contractors performed the work).

## VI.  <u>CONCLUSION</u>

For the reasons discussed above, Defendants' Motion for
Summary Judgment is **DENIED** [ECF No. 12], and Plaintiff's Motion
for Summary Judgment is **GRANTED** [ECF No. 13]. The arbitration award
is **VACATED**. It is further **ORDERED** that this action be and hereby
is **DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket of
the Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this memorandum
opinion and order to counsel of record.

DATED: September 23, 2019

_____
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE